STONE, J.
In this criminal case, the defendant, Adam Martin ("Martin"), was found guilty by a jury of attempted second degree murder. Pursuant to the Habitual Offender Law, Martin was sentenced as a second-felony offender to 80 years at hard labor without benefit of probation or suspension of sentence. The trial court denied Martin's motion to reconsider sentence, and Martin now appeals his sentence as excessive. For the following reasons, we affirm Martin's conviction and sentence.
FACTS AND PROCEDURAL HISTORY
As of the date of the crime, April 12, 2015, Martin had been dating the victim, Jakare Fecunda ("Ms. Fecunda"), on and off for 4 to 5 years. That night, Martin and Ms. Fecunda were at her home on Masters Drive in Shreveport, Louisiana. Around 10 p.m., Ms. Fecunda told Martin she wanted to end her relationship with him. The conversation began at her home, but Martin suggested the two take a walk, and Ms. Fecunda agreed. Before departing from the house, Martin secretly grabbed a kitchen knife to bring with him on the walk. As the pair proceeded along Masters Drive, Ms. Fecunda continued to state that she wanted to end the relationship.
The pair stopped walking and Martin said to Ms. Fecunda, "I love you." Almost simultaneously with his utterance of those words, Martin turned toward her and stabbed her twice in the stomach with the aforementioned kitchen knife. Ms. Fecunda screamed for help and tried to run, but fell to the ground. Martin grabbed her and attempted to stab her in her face, but she raised her arm to block him and Martin stabbed her in her arm just above her elbow. During the struggle, Martin also stabbed Ms. Fecunda once in her head and twice in her back. As Ms. Fecunda lay on the ground, Martin stood over her while she said, "Please, please."
Upon realizing that Martin would not stop stabbing her as long as she struggled, Ms. Fecunda pretended to be dead. Thereupon, Martin, apparently believing he had succeeded in killing her, fled the scene. Once Martin got to the end of the street, Ms. Fecunda got up and tried to get help at a nearby house but no one was home. Ms. Fecunda screamed for help. A nearby resident came to her aid and contacted 911. Ms. Fecunda stated that she repeated Martin's name over and over, because she *581 thought she was going to die and she wanted someone to know who stabbed her.
While Ms. Fecunda was being given first aid, Martin returned to the scene. Martin did not assist in rendering aid to Ms. Fecunda, but "just stood there" and falsely claimed to those present that someone armed with a gun and knife, driving a red car had attacked Ms. Fecunda. However, Ms. Fecunda told those present that Martin was lying and that he was the person who stabbed her.
Ms. Fecunda was transported by ambulance to an area hospital and was treated by a trauma surgeon. He testified that one of the wounds to her abdomen caused serious arterial bleeding which "shot out like a garden hose," and that she would have been dead within another hour if she had not received emergency care. Ms. Fecunda was hospitalized for three weeks and had four surgeries during that period, including one to remove her right kidney, and another to remove part of her liver.
Martin was charged by bill of information with the attempted second degree murder of Ms. Fecunda. Subsequently, he filed a motion for appointment of a sanity commission, which was granted. That motion asked that the sanity commission determine whether Martin had the mental capacity to proceed with the trial and report on whether Martin had a mental or neurological condition at the time of the offense. Both doctors appointed to the sanity commission found Martin competent to stand trial, and the trial court ruled accordingly. After trial, the jury found Martin guilty of attempted second degree murder. Martin filed a motion for post-verdict judgment of acquittal and a motion for a new trial. The trial court denied both motions.
Thereafter, the state filed a habitual offender bill charging Martin as a second-felony offender,[1] and Martin was adjudicated and sentenced as such. Ms. Fecunda provided a victim impact statement at the sentencing hearing. In her testimony, she described the savagery of Martin's attack on her - specifically, her physical injuries, Martin's lies about who attacked her, his lack of remorse, her extensive and painful recovery process, and delaying her college education while she recovered. She also described the psychological trauma that still plagues her and her continuing mental health treatment. Her testimony was demonstrative of how severely Martin's knife attack ravaged her mental well-being as well as her body, and that the extensive scarring to her body will forever serve as a reminder of what Martin did to her.
Prior to sentencing, Martin's counsel asked the trial court to consider as mitigating factors that "Martin is a young man, that he has had a rough home life, that he has suffered abuse, that he does have some mental health issues, [and] that he had to watch a sibling commit suicide." Defense counsel also requested that the court not impose the maximum sentence. The trial court provided the sentencing range for a second-felony offender,[2] and went through an extensive analysis of the aggravating and mitigating factors from La. C.Cr.P. art. 894.1.
In aggravation, the trial court found the following factors set forth La. C.Cr.P. art. 894.1 (A) (1), (2) & (3) as well as La. C.Cr.P. art. 894.1 (B) (1), (6), (9), (10) & (21).
*582 A. When a defendant has been convicted of a felony...the court should impose a sentence of imprisonment if any of the following occurs:
(1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime.
(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution.
(3) A lesser sentence will deprecate the seriousness of the defendant's crime.
...
B. The following grounds, while not controlling the discretion of the court, shall be...[considered]...
(1) The offender's conduct during the commission of the offense manifested deliberate cruelty to the victim.
...
(6) The offender used...actual violence in the commission of the offense.
...
(9) The offense resulted in a significant permanent injury...to the victim...
(10) The offender used a dangerous weapon in the commission of the offense.
...
(19) The offender used a... dangerous weapon while committing or attempting to commit an offense which has, as an element...the use...of physical force against...another [person], and which by its very nature, involves a substantial risk that physical force may be used in the course of committing the offense.
Additionally, La. C.Cr.P. art. 894.1(B)(21) allows the sentencing court to take into account "any other relevant aggravating circumstances." Pursuant thereto, the trial court also considered as an aggravating factor the fact that Martin's attempted murder of Ms. Fecunda was a "domestic offense." The trial court described this as "a greater betrayal because they take a trusting and affectionate relationship and involve violence in it." Ms. Fecunda had been a friend to and emotionally supportive of Martin throughout the tribulations of his life, but nonetheless he tried to kill her.
Likewise, the trial court found it to be an aggravating factor that Martin attempted to thwart the investigation by fabricating a lie about people in a red car having attacked Ms. Fecunda. Finally, the court also found Martin's "absolute and total lack of remorse" an aggravating factor.
The trial court also discussed on the record the mitigating factors listed in La. C.Cr.P. art. 894.1, and stated on the record his reasons why he found them to be of little or no relevance.
The trial court then sentenced Martin to 80 years of incarceration at hard labor without the benefit of probation or suspension of sentence, with credit for time served. The trial court also revoked Martin's probation on his second degree battery conviction (for shooting his own father) and stated that Martin's sentence therefor was to be served consecutively with the sentence for this attempted second degree murder. However, the second degree murder sentence was ordered to run concurrent with any other sentence. The trial court advised Martin of his right to an appeal and his post-conviction relief time limits. Martin filed a motion to reconsider sentence which the trial court denied. Martin now appeals.
DISCUSSION
Martin's assignment of error on appeal is that the trial court erred by imposing an unconstitutionally harsh and excessive sentence. Martin argues that, at the time he *583 attempted to stab Ms. Fecunda to death, he was a 22-year-old with a severe psychological illness. Martin claims that his 80-year sentence is excessive because of his unique situation, and is, in effect, a life sentence. Martin asserts that the sanity commission reports show that he has a history of paranoia, suicidal ideation, cannabis abuse, and substance-induced mood disorder.
The state argues that Martin's crime was premeditated, and was not caused by "evil spirits." The state points out that Martin secretly took a knife from Ms. Fecunda's kitchen, lured her out onto a dark street, stabbed her, returned to the scene to watch her, offered her no help, and then lied about who committed the crime. The state also argues that the sanity commission reports on Martin do not support the theory that he was delusional. Instead, they show that Martin was oriented to time, place, and person, and that his memory was intact.
A trial court has broad discretion to sentence within the statutory limits. Absent manifest abuse of that discretion, a sentence will not be set aside as excessive. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Davis , 52,453 (La. App. 2 Cir. 2/27/19), 265 So.3d 1194 ; State v. Boehm , 51,229 (La. App. 2 Cir. 4/5/17), 217 So.3d 596. Generally, however, maximum or near-maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cozzetto , 07-2031 (La. 2/15/08), 974 So.2d 665 ; State v. Hogan , 47,993 (La. App. 2 Cir. 4/10/13), 113 So.3d 1195, writ denied , 13-0977 (La. 11/8/13), 125 So.3d 445.
An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness: (1) whether the trial court properly took cognizance of the factors set forth in La. C.Cr.P. art. 894.1 ; and (2) whether the sentence is constitutionally excessive under La. Const. art. I § 20.
As previously stated, we must first determine whether the record shows that the trial court took cognizance of the criteria set forth in La. C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith , 433 So.2d 688 (La. 1983) ; State v. DeBerry , 50,501 (La. App. 2 Cir. 4/13/16), 194 So.3d 657, writ denied , 16-0959 (La. 5/1/17), 219 So.3d 332. Articulation of the factual basis for a sentence is the goal of La. C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C.Cr.P. art. 894.1. State v. Lanclos , 419 So.2d 475 (La. 1982) ; State v. DeBerry , supra .
The La. C.Cr.P. art. 894.1 factors to be considered include the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, the seriousness of the offense, and the likelihood of rehabilitation. State v. Jones , 398 So.2d 1049 (La. 1981) ; State v. DeBerry , supra . There is no requirement that any specific factor be given any particular weight at sentencing. State v. DeBerry , supra ; State v. Shumaker , 41,547 (La. App. 2 Cir. 12/13/06), 945 So.2d 277, writ denied , 07-0144 (La. 9/28/07), 964 So.2d 351.
Second, this court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20 if it is grossly out of *584 proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey , 623 So.2d 1276 (La. 1993) ; State v. Bonanno , 384 So.2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver , 01-0467 (La. 1/15/02), 805 So.2d 166 ; State v. DeBerry , supra .
The offense of second degree murder carries a mandatory sentence of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. La. R.S. 14:30.1. The statute defining and punishing the crime of attempt, La. R.S. 14:27, in relevant part states: "If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence."
Louisiana's Habitual Offender Law, La. R.S. 15:529.1, gives the district attorney the option to pursue increased penalties upon the defendant's conviction of a felony if the defendant has already been convicted of certain other felonies within a specified time period (and certain other circumstances are present). Upon proof of the elements of the Habitual Offender Law, sentencing within the increased range provided thereunder is mandatory.[3] Applicable in this case, La. R.S. 15:529.1(A)(1) states: "If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction."
Thus, the applicable sentencing range for Martin as a second-felony offender was 25 to 100 years at hard labor without benefits.[4] At sentencing, the trial court conducted an extensive factual analysis pursuant to the aggravating and mitigating factors set forth in La. C.Cr.P. art. 894.1. The trial court stated that it was taking Martin's mental health into account in determining his sentence, but found it compelling that Martin secretly took a knife from Ms. Fecunda's kitchen, lured her to a dark street, stabbed her six times, left her after she appeared to be dead, and returned to the scene of the stabbing and gave a false story about how attackers in a red car had stabbed Ms. Fecunda. The trial court concluded that such actions are not those of a person in a delusional state, but those of a manipulative, remorseless and violent person.
We agree with the trial court. Martin caused Ms. Fecunda extreme physical pain, the loss of a kidney and part of her liver, extensive scarring and lasting psychological damage, including posttraumatic stress disorder. His stabbing of Ms. Fecunda six times in an attempt to murder her was premeditated, depraved, and horrific. Furthermore, it was only an approximate three weeks before this attempted murder that Martin was released from jail after being convicted of shooting his own father. He was still on probation for that shooting conviction at the time he attempted to murder Ms. Fecunda. Martin's 80-year sentence is in proportion to the seriousness of his offense.
*585 ERRORS PATENT
A review of the record reveals two errors patent, both of which are harmless. First, the trial court failed to order that Martin's 80-year sentence be served without the benefit of parole as required by La. R.S. 14:30.1 and 14:27.[5]
The trial court's failure to state that the sentence is to be served without benefits will be corrected automatically by operation of La. R.S. 15:301.1. See State v. Hooter , 49,708 (La. App. 2 Cir. 2/26/15), 162 So.3d 532 ; State v. Braziel , 42,668 (La. App. 2 Cir. 10/24/07), 968 So.2d 853 ; State v. Klasek , 37,114 (La. App. 2 Cir. 4/11/03), 843 So.2d 646, writ denied , 03-1359 (La. 12/12/03), 860 So.2d 1149.
Second, at the sentencing hearing, the trial court incorrectly stated that the sentencing range for a habitual offender convicted of attempted second degree murder was 16 years and 8 months to 100 years at hard labor. That range is provided for in the 2017 amendments to La. R.S. 15:529.1. Because Martin's offense was committed in 2015, the 2017 amendments do not apply and the applicable sentencing range for Martin is 25 to 100 years at hard labor. Nonetheless, Martin's sentence falls within the proper range.
CONCLUSION
For the foregoing reasons, Martin's conviction and sentence are AFFIRMED .

Martin pled guilty to aggravated second degree battery in 2014, and was sentenced to 10 years of incarceration, with all but 3 years suspended, and was placed on supervised probation for a period of 5 years.

The trial court used the incorrect sentencing range, discussed infra .

However, as explained above, while a sentence may be statutorily mandated it may still be constitutionally excessive.

The trial court misstated Martin's possible sentencing range as 16 years and 8 months to 100 years, discussed infra .

However, the minutes are, in fact, correct under La. R.S. 14:30.1 and 14:27. They state that Martin is to serve his sentence without probation, parole, or suspension of sentence.